# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-2191
Filed April 15, 2026

————————————

**In the Interest of M.M., Minor Child,**

**A.M., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Linn County,
The Honorable Carrie K. Bryner, Judge.

————————————

**AFFIRMED**

————————————

Annette F. Martin, Cedar Rapids, attorney for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Robin L. O'Brien Licht, Cedar Rapids, attorney and guardian ad litem for
minor child.

————————————

Considered without oral argument
by Ahlers, P.J., and Buller and Sandy, JJ.
Opinion by Ahlers, P.J.

**AHLERS, Presiding Judge.**

The Iowa Department of Health and Human Services first became involved with a mother and her two children regarding concerns about abuse the older child suffered at the hands of the mother's paramour. Custody and physical care of the older child was placed with the child's father through a bridge order to district court. But as to the younger child, the juvenile court eventually terminated the mother's parental rights to the child because of her unresolved anger issues and pattern of involvement with domestically abusive paramours.[1]

The mother appeals. She challenges the statutory grounds for termination, contending that the child could have been returned to her custody at the time of the termination hearing. She also claims that termination of her rights is not in the child's best interests and the juvenile court should have applied a permissive exception to forgo termination.

We review termination of parental rights cases de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). We give respectful consideration to the juvenile court's factual findings, especially when assessing witness credibility, but we are not bound by them. *Id.*

We follow a three-step process of review by determining: (1) whether a statutory ground for termination has been established; (2) whether termination is in the child's best interests; and (3) whether a permissive exception should be applied to avoid termination. *In re L.A.*, 20 N.W.3d 529, 532 (Iowa Ct. App. 2025) (en banc).

---

[1] The younger child's father consented to termination and does not appeal the termination of his parental rights.

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(h) (2025). This ground permits termination of parental rights upon clear and convincing evidence that (1) "[t]he child is three years of age or younger"; (2) "[t]he child has been adjudicated a child in need of assistance"; (3) the child has been removed from the physical custody of a parent for at least six of the last twelve months; and (4) the child cannot be returned to the custody of the parent at the present time. Iowa Code § 232.116(1)(h). The mother only challenges the fourth element, whether the child could be safely returned to her custody at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" as used in section 232.116(1)(h)(4) to mean at the time of the termination hearing).

Following our de novo review of the record, we agree with the juvenile court that the child could not be safely returned to the mother's custody at the time of the termination hearing. The mother has a history of domestically abusive relationships, the most recent with the man who physically abused her other child. At the termination hearing she would not definitively admit her paramour abused the child, equivocating because she did not witness the abuse herself.

And while the mother contends that their relationship is over, the record suggests otherwise. She has a history of claiming the relationship is over only to rekindle the romance. They last got together about three months prior to the termination hearing. That reunion resulted in violence that included the paramour breaking into a room in the mother's apartment and holding a gun to her head. Officers arrested the paramour, and the State criminally charged him. Even though the mother is the main witness in that case and has been advised of the importance of her cooperation with the

county attorney, she has yet to contact that office to assist in those criminal proceedings. She was pregnant with his child at the time of the termination hearing, and she suggested she would be willing to revisit a relationship with him under certain conditions.

Based on this evidence, we agree with the caseworker who testified at the termination hearing that the mother lacks insight with respect to healthy relationships. In short, the mother's lack of insight and history strongly suggest that she will continue to involve herself with domestically abusive paramours, which creates a dangerous environment for the child. *See, e.g.*, *In re J.D.*, No. 21-0391, 2021 WL 3379037, at *1 (Iowa Ct. App. Aug. 4, 2021). To be clear, we are mindful of the fact that the mother is a victim of domestic violence, and it is the actions of her abusers that are the root of this issue. Our conclusion that the child cannot be safely returned to her custody is not punishment for her inability to separate herself from her abusive paramours, as it is not the purpose of juvenile law to punish her for her mistakes. *See In re C.M.*, No. 25-1836, 2026 WL 221762, at *2 (Iowa Ct. App. Jan. 28, 2026). Rather, our purpose is to make sure the child is in a safe home, and a safe home for this child has not been provided due to the mother's entanglement with abusive men. *See id.*

In addition to the violence in the home caused by abusive paramours, the mother also struggles with her own anger. The mother denied having "anger issues," instead explaining that she has "had moments of anger." But she admitted to having "moments of blackouts due to anger." And she elaborated that "at any moment it could happen and [she] can't control it." At one point during the department's involvement with the mother, she assaulted her neighbor in front of a young child.

As the juvenile court aptly summarized it, the mother "appears to thrive off of drama and her life is chaotic because of it. This is a case where the totality of the circumstances indicate that the mother cannot ensure her daughter's safety due to the people and situations in which she places herself." The child could not be safely returned to the mother's custody, establishing a statutory ground for termination.

The mother indirectly challenges the juvenile court's determination that termination is in the child's best interests. When making a best-interests determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). But we recognize that a child's safety and need for permanency are "the defining elements in a child's best interests." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted). Because the mother has not demonstrated an appreciation of the harm that domestic violence poses to the child, she is not a safe caregiver. We agree with the juvenile court that termination is in the child's best interests.

Finally, the mother argues that the juvenile court should have applied a permissive exception to termination that permits the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). As the parent resisting termination, it is the mother's burden to establish a permissive exception to termination. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). When applying the exception in section 232.116(3)(c), the "consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for

[the child's] needs." *See D.W.*, 791 N.W.2d at 709.  While we recognize the record establishes there is a loving bond between the mother and child, the mother has not met her burden to establish that the child would be disadvantaged by the termination of the mother's parental rights.  We decline to apply this permissive exception.

**AFFIRMED.**